## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CONOCOPHILLIPS PETROZUATA B.V., CONOCOPHILLIPS HAMACA B.V., CONOCOPHILLIPS GULF OF PARIA B.V., and CONOCOPHILLIPS COMPANY, <br><br> *Plaintiffs*, <br><br> v. <br><br> BOLIVARIAN REPUBLIC OF VENEZUELA, <br><br> *Defendant*. | : <br> : <br> :    C.A. No. 1:22-mc-00464-LPS <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : |

## MEMORANDUM OF LAW OF PETRÓLEOS DE VENEZUELA, S.A. IN SUPPORT OF CROSS-MOTION TO DISMISS FOR LACK OF JURISDICTION AND IN OPPOSITION TO PLAINTIFFS' AMENDED MOTION FOR A WRIT OF ATTACHMENT

HEYMAN ENERIO GATTUSO & HIRZEL LLP
Samuel T. Hirzel, II (#4415)
300 Delaware Avenue, Suite 200
Wilmington, DE 19801
(302) 472-7300
SHirzel@hegh.law

OF COUNSEL:

Joseph D. Pizzurro
Kevin A. Meehan
Juan O. Perla
CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP
101 Park Avenue
New York, NY 10178
(212) 696-6000
jpizzurro@curtis.com
kmeehan@curtis.com
jperla@curtis.com

September 22, 2023

*Attorney for Intervenor Petróleos de Venezuela, S.A.*

## TABLE OF CONTENTS

NATURE AND STAGE OF PROCEEDINGS ...............................................................1

SUMMARY OF ARGUMENT .................................................................................1

STATEMENT OF FACTS .......................................................................................4

      A.    The Terms of the Agreements Between PDVSA and Conoco ...................4

      B.    The ICSID Arbitration: Conoco Successfully Argues that PDVSA and the Republic Are Separate Entities, With Distinct Liabilities..............5

      C.    The ICC Arbitration: Conoco Unsuccessfully Argues that PDVSA and the Republic Are One and the Same .....................................................7

ARGUMENT ........................................................................................................9

**I.     PDVSA Is Presumptively Immune from Jurisdiction** .........................**9**

**II.    Conoco Is Judicially Estopped from Asserting that PDVSA and the Republic Are Alter Egos**..................................................................**10**

      A.    Conoco's Reliance on an Alter Ego Relationship Between PDVSA and the Republic Is Irreconcilably Inconsistent with Its Position in the ICSID Arbitration ...................................................................12

      B.    Conoco Acted in Bad Faith........................................................12

      C.    No Lesser Sanction Is Available..................................................14

**III.   Conoco Is Collaterally Estopped From Asserting that PDVSA and the Republic Are Alter Egos**..................................................................**15**

      A.    The Issues in the ICC Arbitration and this Case Are Identical..................16

      B.    The ICC Tribunal Actually Litigated the Issue of Separateness Between PDVSA and the Republic ...........................................17

      C.    The Determination Was Necessary to the ICC Tribunal's Decision .........18

CONCLUSION....................................................................................................19

# **TABLE OF AUTHORITIES**

**Pg.**

**Cases**

*Allen v. Zurich Insurance Co.*,
  667 F.2d 1162 (4th Cir. 1982). ............................................................... 10

*Arlington Indus. v. Bridgeport Fittings, Inc.*,
  106 F. Supp. 3d 506 (M.D. Pa. 2015)...................................................... 17

*Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*,
  581 U.S. 170 (2017)................................................................................ 9

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
  932 F.3d 126 (3d Cir. 2019) ................................................................... 9

*Danise v. Saxon Mortg. Servs.*,
  738 F. App'x 47 (3d Cir. 2018) ............................................................. 10, 11

*Duplan Corp. v. Deering Milliken, Inc.*,
  397 F. Supp. 1146 (D.S.C. 1974)............................................................ 13

*Faiveley Transp. USA, Inc. v. Wabtec Corp.*,
  758 F. Supp. 2d 211 (S.D.N.Y. 2010) .................................................... 11

*First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*,
  462 U.S. 611 (1983)................................................................................ 9

*G. & V. General Contractors, Inc. v. Goode*,
  No. 86-7408, 1990 U.S. Dist. LEXIS 7086 (E.D. Pa. June 7, 1990)........ 11

*Henglein v. Colt Indus.*,
  260 F.3d 201 (3d Cir. 2001) ................................................................... 16, 17

*In re Bestwell LLC*,
  47 F.4th 233 (3d Cir. 2022) .................................................................... 17

*In re Dex Media, Inc.*,
  595 B.R. 19 (D. Del. 2018)...................................................................... 10

*In re Docteroff*,
  133 F.3d 210 (3d Cir. 1997) ................................................................... 17

*Iseley v. Talaber*,
  232 Fed. App'x 120 (3d Cir. 2007) ........................................................ 15

*Johnson v. United Food & Commercial Workers, etc. Local No. 23*,
  828 F.2d 961 (3d Cir. 1987) ................................................................... 18

*Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*,
   264 F. Supp. 2d 490 (S.D. Tex. 2003), *aff'd*, 364 F.3d 274 (5th Cir. 2004) .............................. 11

*Khandhar v. Elfenbein*,
   943 F.2d 244 (2d Cir. 1991) ......................................................................................................... 16

*Konstantinidis v. Chen*,
   626 F.2d 933 (D.C. Cir. 1980) ..................................................................................................... 13

*Krystal Cadillac-Oldsmobile GMC Truck v. GMC*,
   337 F.3d 314 (3d Cir. 2003) ................................................................................................... 13, 14

*Macfarlan v. Ivy Hill SNF, LLC*,
   675 F.3d 266 (3d Cir. 2012) ......................................................................................................... 10

*McNemar v. Disney Store*,
   91 F.3d 610 (3d Cir. 1996), *cert. denied*, 519 U.S. 1115 (1997) ................................................. 10

*Montana v. United States*,
   440 U.S. 147 (1979) ..................................................................................................................... 16

*Montrose Med. Group Participating Sav. Plan v. Bulger*,
   243 F.3d 773 (3rd Cir. 2001) ....................................................................................................... 11

*Murray v. Silberstein*,
   882 F.2d 61 (3d Cir. 1989) ........................................................................................................... 10

*Nat'l R.R. Passenger Corp. v. Pa. PUC*,
   288 F.3d 519 (3d Cir. 2002) ......................................................................................................... 18

*New Hampshire v. Maine*,
   532 U.S. 742 (2001) ................................................................................................................ 10, 11

*O'Leary v. Liberty Mut. Ins.*,
   923 F.2d 1062 (3d Cir. 1991) ....................................................................................................... 18

*OI European Grp. B.V. v. Bolivarian Republic of Venezuela Petroleos de Venezuela*,
   73 F.4th 157 (3d Cir. 2023) ........................................................................................................... 9

*Phillips Petroleum Co. Venezuela Ltd. v. Petróleos de Venezuela, S.A.*,
   Misc. No. 19-342-LPS, 2022 U.S. Dist. LEXIS 36631 (D. Del. Mar. 2, 2022) ......................... 8

*Raytech Corp. v. White*,
   54 F. 3d 187 (3d Cir. 1995) ......................................................................................................... 16

*Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*,
   81 F.3d 355 (3d Cir. 1996) ..................................................................................................... 10, 13

*Scarano v. Central R.R.*,
    203 F.2d 510 (3d Cir.1953) ................................................................. 10, 13

*Seborowski v. Pittsburgh Press Co.*,
    188 F.3d 163 (3d Cir. 1999) ....................................................................... 15

*Shtab v. Greate Bay Hotel & Casino*,
    173 F. Supp. 2d 255 (D.N.J. 2001) ............................................................ 16

*Speroni S.P.A. v. Perceptron, Inc.*,
    12 Fed. App'x. 355 (6th Cir. 2001) ............................................................ 11

*Swineford v. Snyder County*,
    15 F.3d 1258 (3d Cir. 1994) ....................................................................... 15

*United Access Techs. v. CenturyTel Broadband Servs.*,
    778 F.3d 1327 (Fed. Cir. 2015) .................................................................. 17

*United States v. 5 Unlabeled Boxes*,
    572 F.3d 169 (3d Cir. 2009) ....................................................................... 18

*Universal Am. Barge Corp. v. J-Chem, Inc.*,
    946 F.2d 1131 (5th Cir. 1991) ................................................................... 16

*Vantage Commodities Fin. Servs. I v. Willis Ltd*,
    531 F. Supp. 3d 153 (D.D.C. 2021), *aff'd*, 31 F.4th 800 (D.C. Cir. 2022).............. 11

**Statutes**

28 U.S.C. § 1330 ................................................................................................ 1

28 U.S.C. § 1604 ................................................................................................ 9

**Rules**

Fed. R. Civ. P. 12(b)(1) ...................................................................................... 1

**Miscellaneous**

Restatement (Second) of Judgments § 13 (Am. L. Inst. 1982) .................................... 17

## NATURE AND STAGE OF PROCEEDINGS

Intervenor Petróleos de Venezuela, S.A. ("PDVSA") submits this memorandum of law in support of its cross-motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule 12(b)(1) and the Foreign Sovereign Immunities Act (the "FSIA") and in opposition to the motion (the "Attachment Motion") filed by Plaintiffs ConocoPhillips Petrozuata B.V., ConocoPhillips Hamaca B.V., ConocoPhillips Gulf of Paria B.V., and ConocoPhillips Company ("Conoco") for a writ of attachment against the shares of PDV Holding, Inc. ("PDVH") to satisfy a judgment entered against the Bolivarian Republic of Venezuela (the "Republic").[1]

## SUMMARY OF ARGUMENT

While PDVSA maintains its position that PDVSA is distinct from the Republic, this motion does not challenge this Court's determination that PDVSA is the Republic's alter ego in *Crystallex* and *OIEG* and the other cases pending before this Court in which creditors of the Republic have sought to attach and execute upon the PDVH shares.[2]  This case is wholly distinguishable from those cases.  Here, Conoco, based on its litigation conduct in prior proceedings, is estopped from asserting that the Republic and PDVSA are alter egos or benefitting from this Court's prior alter ego determination.

Unlike the Republic's creditors in those other cases before this Court, Conoco negotiated and entered into contracts directly with PDVSA (the "Association Agreements") that

---

[1] PDVSA opposes the Attachment Motion for all the reasons set forth in the Republic's opposition to the Attachment Motion, which are incorporated herein.

[2] PDVSA and the Republic have filed a petition for a writ of certiorari in *OIEG* and the related cases. For the avoidance of doubt, PDVSA reserves its right to appeal a denial of its sovereign immunity in this case that is predicated on the analysis in *OIEG*. PDVSA further reserves its right to seek relief from any judgment or order granting the Attachment Motion in the event the Third Circuit's decision in *OIEG* is reversed, modified, or overruled.

unambiguously recognized that PDVSA was separate from the Republic.[3]  Furthermore, Conoco

has already litigated the issue of PDVSA's separate status from the Republic in two arbitrations.

Conoco took diametrically opposed positions in those cases.  In the underlying arbitration against

the Republic at the International Centre for Settlement of Investment Disputes ("ICSID"), upon

which its U.S. judgment is based, Conoco argued that the Republic was separate and distinct

from PDVSA to avoid the application of certain compensation limits that Conoco had agreed to

in the Association Agreements.  The ICSID tribunal agreed with Conoco's position and awarded

Conoco approximately $8.5 billion on that basis.  Meanwhile, in a separate International

Chamber of Commerce ("ICC") arbitration against PDVSA, Conoco argued that PDVSA and the

Republic are one and the same and therefore PDVSA was responsible to fully compensate

Conoco for its losses without regard for the compensation limits in the Association Agreements.

The ICC tribunal rejected Conoco's argument and awarded Conoco approximately $1.9 billion

by applying the compensation limits in the Association Agreements.  In light of Conoco's

positions in the underlying ICSID arbitration and the holdings of the arbitral tribunals, Conoco is

both judicially and collaterally estopped from arguing that PDVSA is the alter ego of the

Republic in this case.  Because Conoco's assertion of jurisdiction over PDVSA under the FSIA

rests entirely on the theory that PDVSA is the alter ego of the Republic and because Conoco is

estopped from asserting such a theory in this case, this proceeding must be dismissed for lack of

subject matter jurisdiction under the FSIA.

     Judicial estoppel applies where, as here, a party is advancing a position that is

inconsistent with a position that it took in a prior proceeding.  Having argued in the underlying

---

[3] As explained below, various subsidiaries of Conoco and subsidiaries of PDVSA were parties to
the Association Agreements.  For the sake of simplicity, those respective subsidiaries are
referred to herein as "PDVSA" and "Conoco."

ICSID arbitration that the Republic was separate from PDVSA, and having benefited from the ICSID tribunal's acceptance of that argument, Conoco is judicially estopped from now taking or benefitting from the contradictory position that PDVSA is the alter ego of the Republic. Conoco's argument in this Court constitutes a bad faith attempt to avoid the consequences of its prior argument in the ICSID arbitration that the Republic was separate from PDVSA.  And despite having already obtained a conditional writ of attachment in respect of the $1.9 billion ICC award, Conoco is now seeking a further attachment of the PDVH shares in respect of the $8.5 billion ICSID award against the Republic – an outcome that would amount to an improper *quintuple* recovery against PDVSA.  Judicial estoppel bars such a bad faith gambit.

Conoco's argument that PDVSA is the alter ego of the Republic is also barred by collateral estoppel.  Conoco has already litigated the issue of whether PDVSA is separate from the Republic in two separate arbitrations, and, in both cases, the arbitration tribunals concluded that PDVSA is separate from the Republic.  In particular, Conoco argued in the ICC arbitration that PDVSA and the Republic are one and the same in order to avoid the compensation limits in its contracts with PDVSA and to hold PDVSA fully liable for the same expropriation at issue in the ICSID arbitration.  But the ICC tribunal rejected Conoco's argument.  Conoco's Attachment Motion seeks to relitigate that same issue – *i.e.*, that PDVSA is the alter ego of the Republic and therefore its assets should be diverted to satisfy the Republic's obligation under the ICSID award.

Two arbitral tribunals have granted Conoco an award on the premise that PDVSA and the Republic are separate and distinguishable.  And one of those rulings was based on Conoco's own arguments.  Conoco is not entitled to yet another bite at the apple here.

## STATEMENT OF FACTS

### A.  The Terms of the Agreements Between PDVSA and Conoco

The underlying dispute arises out of Conoco's participation in three crude oil projects in Venezuela: the "Petrozuata Project," the "Hamaca Project," and the "Corocoro Project" (collectively, the "Projects").  The Projects required special authorization by the Venezuelan Congress pursuant to Venezuelan law.[4]  Under that law, only the Republic and PDVSA were permitted to engage in the petroleum industry; however, private companies could enter into joint ventures with state-owned companies in "special cases," strictly in accordance with any terms and conditions approved by the Venezuelan Congress.  *See* Pizzurro Decl. Ex. A ¶ 99.[5]

Conoco obtained the requisite authorization for each Project from the Venezuelan Congress and proceeded to negotiate Association Agreements with PDVSA to govern the Projects.  D.I. 3 at 4; Pizzurro Decl., Ex. B ¶¶ 281-286;[6] Pizzurro Decl., Ex. A ¶¶ 2-6.  The Petrozuata Association Agreement was signed on November 10, 1995, the Corocoro Association Agreement was signed on July 10, 1996, and the Hamaca Association Agreement was signed on July 9, 1997.  Pizzurro Decl., Ex. A ¶¶ 120, 176, 153.

Central to this dispute, the Association Agreements governing the Petrozuata and Hamaca Projects, the two largest projects, contained indemnity provisions pursuant to which PDVSA's affiliates agreed to indemnify Conoco with respect to adverse actions that might be taken by the Republic, which the parties agreed included expropriation.  Pizzurro Decl., Ex. B

---

[4] The 1975 Organic Law that Reserves to the State the Industry and Trade of Hydrocarbons.

[5] A copy of the ICSID tribunal's Decision on Jurisdiction and the Merits is appended as Exhibit A to the Declaration of Joseph D. Pizzurro, dated September 22, 2023 ("Pizzurro Decl.").

[6] A copy of the ICSID tribunal's Final Award is appended as Exhibit B to the Pizzurro Decl.

¶ 98; Pizzurro Decl., Ex. A ¶¶ 115, 124, 150, 155.  PDVSA executed separate guarantees of its affiliates' indemnity obligations.  Under these provisions, Conoco agreed to limit the obligations of PDVSA and its subsidiaries to provide compensation for adverse governmental action through a price cap mechanism, *i.e.*, PDVSA's liability would be limited to a guarantee of cash flows calculated on the basis of a crude oil price per barrel of US$25 per barrel in 1994 dollars in the case of the Petrozuata Project and US$27 in 1996 dollars in the case of the Hamaca Project.  Pizzurro Decl., Ex. B ¶¶ 93, 121, 138.[7]  Each of the Association Agreements also contained an ICC arbitration clause.

### B.      The ICSID Arbitration: Conoco Successfully Argues that PDVSA and the Republic Are Separate Entities, With Distinct Liabilities

The three oil Projects commenced operations and continued until 2007.  In 2007, the Republic issued a decree nationalizing the Projects (the "2007 Nationalization Decree").  On November 2, 2007, Conoco initiated an arbitration against the Republic seeking $30 billion in damages pursuant to a bilateral investment treaty, *i.e.*, the 1991 Agreement on Encouragement and Reciprocal Protection of Investments between the Kingdom of the Netherlands and the Republic of Venezuela, which allows for ICSID arbitration.  Conoco asserted that it was entitled to full compensation for the alleged expropriation of the Projects.  Pizzurro Decl., Ex. B ¶ 196.

During the ICSID arbitration, in order to avoid the compensation limits in the Association Agreements, Conoco argued that the Republic and PDVSA were separate and distinct entities. *See id.* ¶¶ 94-112.  Specifically, Conoco argued that the compensation limits were inapplicable and did "not affect [the Republic's] obligations under international law" because the Republic was neither a party to nor a third-party beneficiary of the Association Agreements.  *Id.* ¶¶ 95,

---

[7] The Corocoro Association Agreement did not contain an indemnity provision.

107.  Conoco claimed that it had negotiated and entered into the Association Agreements with a third party, PDVSA, and not the Republic.  *See id.* ¶¶ 106-107.  Conoco further argued that, because the Republic was neither a party nor a beneficiary to those Agreements, the Republic could not invoke the compensation limits in those Agreements.  Conoco also asserted that it had not "agree[d] to any limitations of the [Republic's] potential liability" in the Association Agreements and that those third-party Agreements were only effective against PDVSA and could not modify the Republic's obligations under international law.  *Id.* ¶¶ 106, 147.

Conoco thus argued that any "[p]otential contractual causes of action" against PDVSA were "separate and distinct from Treaty claims" against the Republic.  According to Conoco:

> [The] Association Agreements were limited to the reciprocal rights and obligations of the parties to those Agreements.  PDVSA and its subsidiaries were authorized to agree to take some degree of indemnity upon themselves.  They could not and did not purport to agree to impose obligations on the State; that matter was outside the scope of the Agreements and was governed by other sources of State obligations, including international law.

*Id.* ¶ 106.  In sum, in order to circumvent the compensation limits set forth in the Association Agreements, Conoco relied on the legal distinction between PDVSA and the Republic, asserting that each was subject to its own obligations and liabilities.  The import of these arguments cannot be understated.  By avoiding the compensation limits (which provided for compensation to be calculated based on oil prices of $25-27 per barrel), Conoco sought damages based on crude oil prices several times higher than the price caps set forth in the Association Agreements.  *Id.* ¶¶ 995, 998.  Thus, Conoco sought recovery of billions of dollars in damages far exceeding the compensation it was entitled to under compensation limits it had agreed to pursuant to the Association Agreements.

The ICSID tribunal accepted Conoco's arguments that PDVSA and the Republic were separate entities, each with its own distinct obligation and source of liability.  It concluded that Conoco was seeking compensation for breach of the treaty, not the Association Agreements.  *Id.* ¶ 169.  The tribunal further rejected the Republic's reliance on the compensation limits, pointing to the fact that the Republic was not a party to those Agreements.  *Id.* ¶ 158.  The tribunal then calculated Conoco's damages based on oil prices far in excess of the price caps in the compensation limits and awarded Conoco approximately $8.5 billion in compensation.  *Id.* ¶ 1010.  That award is currently the subject of annulment proceedings in ICSID.

### C.    The ICC Arbitration: Conoco Unsuccessfully Argues that PDVSA and the Republic Are One and the Same

While the ICSID proceedings were underway, Conoco commenced ICC arbitrations against PDVSA pursuant to the arbitration clauses in the Association Agreements.  In the ICC arbitration, Conoco did not limit itself to claims for indemnification under the provisions of the Association Agreements.  Rather, Conoco sought to hold PDVSA liable for the entirety of its damages resulting from the alleged expropriation, asserting additional, more expansive claims for "willful breach" and "*hecho illicito*," *i.e.*, a wrongful act.[8]  Pizzurro Decl., Ex. C ¶¶ 55-70.[9]

In support of these expansive claims, Conoco reversed course from the position it had taken in the ICSID arbitration—*i.e.*, that PDVSA's liabilities were distinct from those of the Republic—and instead argued that PDVSA and the Republic were effectively one and the same.  Conoco asserted that the Republic's expropriation of the Projects was "an act of PDVSA" and

---

[8] The ICC tribunal found that Conoco's willful breach and *hecho illicito* claims were essentially identical.

[9] A copy of the Award in the ICC arbitration is appended as Exhibit C to the Pizzurro Decl.

therefore constituted a breach of the obligation to exercise "reasonable commercial efforts" under the Association Agreements.  *Id.* ¶¶ 342-403.

PDVSA asserted a "compliance with the law defense" to the willful breach claims on the grounds that any actions and omissions of PDVSA relied upon by Conoco in support of its claims were undertaken by PDVSA in compliance with the 2007 Nationalization Decree, and that such compliance was a defense to those claims.  *See id.* ¶¶ 300, 444.  In response, Conoco argued that PDVSA could not assert a compliance with the law defense on the grounds that PDVSA and the Republic were one and the same, relying on the same arguments made in support of its willful breach claim.  *See id.* ¶¶ 449-50, 460-462.

The ICC tribunal rejected Conoco's arguments that the Republic's acts should be treated as acts of PDVSA.  *Id.* ¶ 403.  It held that the 2007 Nationalization Decree, "which hindered performance of the contract, was . . . an act of the Government and moreover, the Government is not a party to the [Association Agreements] and the Guarantees."  *Id.* ¶ 471.  The ICC tribunal further held that the expropriation of Conoco's interests in the Projects was not attributable to PDVSA.  *Id.* ¶ 473.  Accordingly, the ICC tribunal dismissed Conoco's willful breach claims. *Id.* ¶ 491.  The ICC tribunal did hold PDVSA liable under the indemnity provisions of the Association Agreements, and, applying the contractually agreed-upon compensation limits, ultimately awarded Conoco US$1,887,587,749.06.  Pizzurro Decl. Ex. D.  PDVSA then partially paid the award pursuant to a Settlement Agreement.  *See Phillips Petroleum Co. Venezuela Ltd. v. Petróleos de Venezuela, S.A.*, Misc. No. 19-342-LPS, 2022 U.S. Dist. LEXIS 36631, at *8 (D. Del. Mar. 2, 2022).  Conoco obtained a judgment against PDVSA on that ICC award, registered that judgment in this Court and obtained a conditional writ of attachment of the PDVH shares based on that ICC award and judgment against PDVSA.  *See id.* at *30.

## ARGUMENT

### I.  PDVSA Is Presumptively Immune from Jurisdiction

Under the FSIA, foreign states and their instrumentalities are presumptively immune from suit in U.S. courts.  *See* 28 U.S.C. § 1604; *see also, e.g., Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*, 581 U.S. 170, 180 (2017).  Moreover, the Supreme Court has established that a foreign state and its agencies and instrumentalities are presumptively treated as separate entities, such that an "agency or instrumentality of a foreign state" is not liable for the debts of the state.  *First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 625 (1983) ("*Bancec*").

There is no question that PDVSA is an "agency or instrumentality" of the Republic.  Accordingly, as this Court and the Third Circuit have acknowledged, PDVSA is entitled to a presumption that it is immune from the jurisdiction of this Court unless Conoco can carry its burden of establishing that (i) an exception to immunity applies, and (ii) PDVSA is a distinct entity from the Republic.  *See, e.g.*, *OI European Grp. B.V. v. Bolivarian Republic of Venezuela Petroleos de Venezuela*, 73 F.4th 157, 167 (3d Cir. 2023) ("*OIEG*").

Conoco's sole argument in support of jurisdiction rests on this Court's determination that it has jurisdiction under the FSIA on the grounds that PDVSA is the alter ego of the Republic.  D.I. 3 at 5 (citing *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 932 F.3d 126, 136 (3d Cir. 2019) and *OIEG*).  While PDVSA maintains its position that it is distinct from the Republic, as set forth below, Conoco is estopped from arguing that PDVSA is the alter ego of the Republic based on Conoco's conduct and the decisions of the tribunals in the underlying arbitrations.

## II. <u>Conoco Is Judicially Estopped from Asserting that PDVSA and the Republic Are Alter Egos</u>

The doctrine of judicial estoppel "seeks to prevent a litigant from asserting a position inconsistent with one that he or she has previously asserted in the same or in a previous proceeding." *Macfarlan v. Ivy Hill SNF, LLC*, 675 F.3d 266, 272 (3d Cir. 2012) (quoting *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 358 (3d Cir. 1996)). "The doctrine exists 'to protect the integrity of the judicial process and to prohibit parties from deliberately changing positions according to the exigencies of the moment.'" *Id.* (quoting *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001)); *see also, e.g., Danise v. Saxon Mortg. Servs.*, 738 F. App'x 47, 50 (3d Cir. 2018) (quoting *Ryan Operations,* 81 F.3d at 358) ("The basic principle [of judicial estoppel] is that absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory."). The doctrine "serves a consistently clear and undisputed jurisprudential purpose: to protect the integrity of the courts." *McNemar v. Disney Store*, 91 F.3d 610, 616 (3d Cir. 1996), *cert. denied*, 519 U.S. 1115 (1997). Simply put, it is a rule against "playing fast and loose with the courts," *Scarano v. Central R.R.*, 203 F.2d 510, 513 (3d Cir.1953) (citation omitted), or "blowing hot and cold as the occasion demands," *Allen v. Zurich Insurance Co.*, 667 F.2d 1162, 1167 n.3 (4th Cir. 1982). Application of the doctrine is "particularly appropriate" where the litigant "benefited from his original position." *Murray v. Silberstein*, 882 F.2d 61, 66 (3d Cir. 1989); *see also In re Dex Media, Inc.*, 595 B.R. 19, 38 (D. Del. 2018) (quoting *Ryan Operations,* 81 F.3d at 362) (affirming bankruptcy court's judicial estoppel finding where litigant "play[ed] fast and loose with the court" and reversed position to "'obtai[n] unfair advantage'").

Courts have routinely held that a party's position in a prior arbitration can give rise to judicial estoppel in subsequent court litigation.  *See, e.g., Speroni S.P.A. v. Perceptron, Inc.*, 12 Fed. App'x. 355, 358 n.1 (6th Cir. 2001) (collecting cases) (concluding that judicial estoppel precluded plaintiff's claims where plaintiff had taken inconsistent position in prior arbitration); *Vantage Commodities Fin. Servs. I v. Willis Ltd*, 531 F. Supp. 3d 153, 167 (D.D.C. 2021) ("Courts have applied judicial estoppel when the prior proceeding was an arbitration."), *aff'd*, 31 F.4th 800 (D.C. Cir. 2022); *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 264 F. Supp. 2d 490, 498 n.8 (S.D. Tex. 2003) ("It is widely held that a position taken in an arbitration can give rise to judicial estoppel."), *aff'd*, 364 F.3d 274 (5th Cir. 2004); *Faiveley Transp. USA, Inc. v. Wabtec Corp.*, 758 F. Supp. 2d 211, 218 (S.D.N.Y. 2010) (applying judicial estoppel to bar defense that was "utterly inconsistent with [defendant's] position before [an] arbitrator" in a prior arbitration); *G. & V. General Contractors, Inc. v. Goode*, No. 86-7408, 1990 U.S. Dist. LEXIS 7086, *29 (E.D. Pa. June 7,1990) (finding that judicial estoppel barred claim where plaintiff had taken a position that "completely contradict[ed]" its position in both the litigation and in a prior arbitration).

The Third Circuit has established three threshold requirements for applying judicial estoppel: "(1) the party to be estopped is asserting a position that is irreconcilably inconsistent with one he or she asserted in a prior proceeding; (2) the party changed his or her position in bad faith, *i.e.*, in a culpable manner threatening to the court's authority or integrity; and (3) the use of judicial estoppel is tailored to address the affront to the court's authority or integrity." *Danise,*738 F. App'x at 50 (quoting *Montrose Med. Group Participating Sav. Plan v. Bulger*, 243 F.3d 773 (3rd Cir. 2001)); *cf. New Hampshire v. Maine*, 532 U.S. at 750-751.  Here, each of those requirements is satisfied.

### A. Conoco's Reliance on an Alter Ego Relationship Between PDVSA and the Republic Is Irreconcilably Inconsistent with Its Position in the ICSID Arbitration

First, Conoco's position in this case is irreconcilably inconsistent with its position in the ICSID arbitration, upon which its Attachment Motion is based. Conoco's Attachment Motion rests exclusively on the theory that this Court has jurisdiction to attach PDVSA's property because PDVSA is the alter ego of the Republic. That theory is fundamentally inconsistent with Conoco's position in the ICSID arbitration, where it argued that PDVSA is a distinct legal entity from the Republic. *See* Pizzurro Decl. Ex. B ¶¶ 94-107.

Specifically, in the ICSID arbitration, Conoco argued that the compensation limits set forth in the Association Agreements could not affect the scope of the Republic's liability because the Republic was neither a party to nor a third-party beneficiary of those agreements. *Id.* ¶¶ 94-107. It alleged that in entering into the Association Agreements, Conoco "[was] not negotiating with the State and hence [was] not agreeing to any limitations of the State's potential liability," claiming that its "access was limited to representatives of" PDVSA. *Id.* at ¶ 106. According to Conoco, while "PDVSA and its subsidiaries were authorized to agree to take some degree of indemnity upon themselves," they "could not and did not purport to agree to impose obligations on the State." *Id.* at ¶ 106. Conoco thus took the express position that the Republic could not "step into the shoes of the PDVSA subsidiaries that [we]re actually parties to the Association Agreements." *Id.* at ¶ 147. These statements cannot be reconciled with Conoco's position before this Court that PDVSA and the Republic are alter egos.

### B. Conoco Acted in Bad Faith

Second, the evidence establishes that Conoco acted in bad faith in pursuing these inconsistent positions. Since judicial estoppel does not apply "when the prior position was taken

because of a good faith mistake rather than as part of a scheme to mislead the court," an

inconsistent argument sufficient to invoke judicial estoppel must be "attributable to intentional

wrongdoing." *Ryan Operations,* 81 F.3d at 362 (quoting *Konstantinidis v. Chen*, 626 F.2d 933,

939 (D.C. Cir. 1980)).  While any benefit to the estopped party is not determinative, it is "a

factor in determining whether the evidence would support a conclusion of bad faith." *Krystal*

*Cadillac-Oldsmobile GMC Truck v. GMC*, 337 F.3d 314, 324 (3d Cir. 2003) (citing *Ryan*

*Operations*, 81 F.3d at 361).  In this regard, bad faith can be found where "intentional self-

contradiction is being used as a means of obtaining unfair advantage in a forum provided for

suitors seeking justice." *Scarano*, 203 F.2d at 513.

       Here, Conoco's inconsistent positions reflect its calculated, bad faith attempt to "have its

cake and eat it too." *Duplan Corp. v. Deering Milliken, Inc*., 397 F. Supp. 1146, 1177 (D.S.C.

1974).  Conoco successfully procured this $8.5 billion award against the Republic on the theory

that the Republic, and its obligations, were distinct and separate from PDVSA and its

obligations.  Conoco's position in the ICSID arbitration was decidedly strategic: if PDVSA and

the Republic were treated as one and the same, sharing the same obligations and liabilities,

Conoco would have had to concede that its treaty-based claims were subject to the compensation

limits set forth in the Association Agreements it executed with PDVSA.  Conoco's entire

argument in the ICSID arbitration thus depended on the legal distinction between PDVSA and

the Republic.  Indeed, the ICSID tribunal agreed with Conoco as to that distinction.

       Yet now, Conoco seeks an attachment of PDVSA's shares in PDVH on the theory that

PDVSA and the Republic are one and the same.  Conoco cannot procure an exponentially larger

award against the Republic than it could against PDVSA on the theory that the Republic is

wholly separate from PDVSA, and then seek to enforce that award against PDVSA's assets on

the theory that the parties are in fact alter egos.  This is not a situation where Conoco made an erroneous argument, lost, and now seeks to have this Court follow the arbitral tribunal's holding; rather, Conoco deliberately adopted a strategic position in the ICSID arbitration, won, and now argues the opposite to this Court in order to collect more than it could have if it had taken that opposite position from the outset.  Conoco's flagrant reversal of positions regarding the relationship between PDVSA and the Republic is tantamount to bad faith.[10]

### C.      No Lesser Sanction Is Available

While judicial estoppel is to be employed when there is no lesser sanction available, "the fact that a sanction is to be used sparingly does not mean that it is not to be used when appropriate." *Krystal*, 337 F.3d at 325.  When applying a lesser sanction would reward a party for what appears to be duplicitous conduct, or when a lesser sanction would fail to preserve the integrity of the earlier proceedings, judicial estoppel is appropriate.  *See id.*

Again, Conoco made a calculated, strategic decision to argue that the Republic and PDVSA were separate and distinct and had separate and distinct obligations and liabilities in a successful effort to avoid a limitation on its recovery against the Republic based on the caps that Conoco agreed to in its Association Agreements with PDVSA.  Because the ICSID tribunal accepted that argument, Conoco received a far greater award than it would have received had it taken the position that PDVSA and the Republic are alter egos (*i.e.*, one and the same).  Now, Conoco seeks to satisfy the obligation of the Republic against the assets of PDVSA on that contrary theory, while simultaneously seeking to execute on the same PDVH shares to enforce its ICC award, which Conoco obtained directly against PDVSA after having lost the argument

---

[10] Conoco's bad faith is also evidenced by its reversal of the position it took in the ICSID arbitration in its subsequent ICC arbitration against PDVSA, as described in Section II, *infra.*

that PDVSA and the Republic are indistinguishable.  Moreover, Conoco's $8.5-billion award against the Republic dwarfs those of the Republic's other creditors, raising the prospect that it could overtake any recovery those other creditors may be able to obtain, even though those creditors did not deal separately with PDVSA or engage in the same litigation conduct as Conoco did.  Thus, any lesser sanction would not only reward Conoco's duplicitous conduct, but also cast a pall on the integrity of this Court's proceedings with respect to the PDVH shares.

### III.   Conoco Is Collaterally Estopped From Asserting that PDVSA and the Republic Are Alter Egos

In the ICC arbitration with PDVSA, Conoco reversed course from the position it had taken in the ICSID arbitration against the Republic, and argued that PDVSA and the Republic were one and the same, seeking to impose upon PDVSA full liability for the expropriation and avoid the caps in the Association Agreements.  But Conoco lost its gambit and the ICC tribunal found that PDVSA and the Republic were separate and distinct entities.  Conoco is estopped from arguing otherwise here.[11]

Issue preclusion, or collateral estoppel, prevents parties from re-litigating any issue that has been validly, finally, and actually determined on the merits in a previous case.  "The policy behind the doctrine is that 'a losing litigant deserves no rematch after a defeat fairly suffered, in adversarial proceedings, on an issue identical in substance to the one he subsequently seeks to raise.'"  *Iseley v. Talaber*, 232 Fed. App'x 120, 123 (3d Cir. 2007) (quoting *Swineford v. Snyder County*, 15 F.3d 1258, 1266 (3d Cir. 1994)).[12]

---

[11] The ICSID tribunal's conclusion that the Republic is distinct from PDVSA, as discussed in Section II, *supra,* and therefore subject to distinct liabilities also estops Conoco from arguing otherwise here.

[12] Collateral estoppel is also applicable where the prior proceeding was an arbitration.  *See, e.g., Seborowski v. Pittsburgh Press Co.,* 188 F.3d 163 (3d Cir. 1999) (applying issue preclusion to an arbitrator's interpretation of a collective bargaining agreement); *Universal Am. Barge Corp. v. J-*

In the Third Circuit, issue preclusion applies where: "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action." *Henglein v. Colt Indus.*, 260 F.3d 201, 209 (3d Cir. 2001) (quoting *Raytech Corp. v. White*, 54 F. 3d 187, 190 (3d Cir. 1995)). Here, the extent of PDVSA's distinct liability to Conoco was previously litigated in the ICC Arbitration, and the ICC tribunal's conclusion that PDVSA and the Republic were separate entities was necessary to its decision.[13]

### A.  The Issues in the ICC Arbitration and this Case Are Identical

Although the word "identical" is often used in describing the first element of collateral estoppel, perfect precision in the overlap between the issues asserted is not required – it is enough that the issues are "in substance the same." *See Montana v. United States*, 440 U.S. 147, 155 (1979). Here, as noted above, Conoco's Attachment Motion rests exclusively on the alleged alter ego relationship between PDVSA and the Republic. Conoco took the very same position in the ICC arbitration and lost.

As explained above, Conoco asserted claims in the ICC arbitration to hold PDVSA liable to fully compensate Conoco for the underlying expropriation by the Republic without regard for the compensation limits in the indemnity provisions in the Association Agreements. To justify

---

*Chem, Inc*., 946 F.2d 1131, 1136 (5th Cir. 1991) (rejecting argument that collateral estoppel does not apply "because the primary determination was rendered in an arbitration proceeding, rather than in a 'court of law'"); *Khandhar v. Elfenbein*, 943 F.2d 244, 247 (2d Cir. 1991) ("It is settled law that the doctrine of issue preclusion is applicable to issues resolved by an earlier arbitration.") (internal alterations and quotations omitted); *Shtab v. Greate Bay Hotel & Casino*, 173 F. Supp. 2d 255, 261 (D.N.J. 2001) ("The doctrine of issue preclusion applies to issues resolved in arbitration proceedings.").

[13] Conoco cannot dispute that it was fully represented in the ICC arbitration.

its demands for full compensation, Conoco argued that PDVSA was one and the same as the Republic and was therefore liable for the underlying expropriation.  *See, e.g.,* Pizzurro Decl. Ex. C ¶¶ 342, 401-403.  Conoco further argued that PDVSA was one and the same as the Republic and therefore could not assert a compliance with law defense – as that doctrine cannot be invoked by an alter ego of the State.  *See, e.g., id.* at ¶¶ 449-50, 406-462.  That argument is identical to the issue underlying Conoco's theory in this case: whether PDVSA and the Republic should be treated as one and the same such that Conoco can enforce its judgment against the PDVH shares.

### B.     The ICC Tribunal Actually Litigated the Issue of Separateness Between PDVSA and the Republic

"Whether a matter sought to be precluded was actually litigated 'depends on the second court's concluding that the issue in dispute was clearly resolved by the first tribunal.'"  *Arlington Indus. v. Bridgeport Fittings, Inc.*, 106 F. Supp. 3d 506, 514 n.7 (M.D. Pa. 2015) (citing *United Access Techs. v. CenturyTel Broadband Servs.*, 778 F.3d 1327, 1334 (Fed. Cir. 2015) (applying Third Circuit law)).  The Third Circuit has "refused to apply an 'unduly rigid' 'concept of finality'" and accordingly treats an order as "final for preclusion purposes as long as it is 'sufficiently firm to be accorded conclusive effect.'"  *In re Bestwell LLC*, 47 F.4th 233, 243-244 (3d Cir. 2022) (citing *Henglein*, 260 F.3d at 209-10 (quoting Restatement (Second) of Judgments § 13 (Am. L. Inst. 1982)); *In re Docteroff*, 133 F.3d 210, 216 (3d Cir. 1997)).

Here, there can be no question that the relationship between PDVSA and the Republic was actually litigated before the ICC tribunal.  The ICC tribunal conclusively rejected Conoco's argument that PDVSA and the Republic are one and the same.  *See* Pizzurro Decl., Ex. C ¶¶ 400-409.  Accordingly, the tribunal rejected Conoco's attempt to avoid the limitations contained in the Association Agreements, and accepted PDVSA's argument that the expropriation was an act

of the Republic, not PDVSA.  *See id.* at ¶ 471.  Thus, the issue of PDVSA's relationship to the Republic was "clearly resolved" by the ICC tribunal.

      **C.**      **The Determination Was Necessary to the ICC Tribunal's Decision**

In determining whether an issue was essential to the judgment, the Third Circuit looks to whether the issue "was critical to the judgment or merely dicta."  *Nat'l R.R. Passenger Corp. v. Pa. PUC*, 288 F.3d 519, 527 (3d Cir. 2002) (citing *O'Leary v. Liberty Mut. Ins.*, 923 F.2d 1062, 1067 (3d Cir. 1991)).  Here, there is no question that the ICC's determination regarding the distinction between PDVSA and the Republic was essential to the judgment.  The ICC tribunal found that PDVSA and the Republic were two separate entities, holding that PDVSA had "proved that the 2007 Nationalization Decree is not attributable and is external to them as a matter of fact."  Pizzurro Decl. Ex. C ¶ 490.  Had the tribunal found that the Nationalization Decree was <u>not</u> external to PDVSA because it was essentially an arm of the Republic, it would have reached a different result.  The tribunal's contrary conclusion was therefore necessary to the judgment.

Finally, for purposes of preservation, PDVSA submits that *res judicata*, or claim preclusion, also estops Conoco from shifting liability for the ICSID award to PDVSA. *Res judicata* "requires a showing that there has been (1) a final judgment on the merits in a prior suit involving (2) the same claim and (3) the same parties or their privies."  *United States v. 5 Unlabeled Boxes*, 572 F.3d 169, 173 (3d Cir. 2009) (citation omitted); *see also Johnson v. United Food & Commercial Workers, etc. Local No. 23*, 828 F.2d 961, 963 (3d Cir. 1987) (noting that "principles of res judicata and collateral estoppel prevented plaintiffs from relitigating the matter" that "had been determined by arbitration"). The ICC tribunal rendered a final decision on the merits of PDVSA's liability to Conoco, rejecting Conoco's argument that PDVSA should be

held liable for the underlying expropriation to the full extent as the Republic. That final award has been reduced to a final U.S. judgment, and Conoco already obtained a conditional writ of attachment of the PDVH shares in proceedings before this Court on the basis of that final award and judgment. Conoco is again seeking to hold PDVSA liable to the same extent as the Republic by shifting responsibility for the Republic' liability on the ICSID award to PDVSA. These proceedings all involve Conoco, PDVSA, or their privies.

## CONCLUSION

For the foregoing reasons, this Court should grant PDVSA's motion to dismiss for lack of subject matter jurisdiction and deny Conoco's Attachment Motion.

Dated: September 22, 2023

HEYMAN ENERIO GATTUSO & HIRZEL LLP

*/s/ Samuel T. Hirzel*
Samuel T. Hirzel, II (#4415)
300 Delaware Avenue, Suite 200
Wilmington, DE 19801
(302) 472-7300
SHirzel@hegh.law

*Attorney for Intervenor Petróleos de Venezuela, S.A.*

OF COUNSEL:

Joseph D. Pizzurro
Kevin A. Meehan
Juan O. Perla
CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP
101 Park Avenue
New York, NY 10178
(212) 696-6000
jpizzurro@curtis.com
kmeehan@curtis.com
jperla@curtis.com