**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| CONOCOPHILLIPS PETROZUATA B.V., et al., <br><br> *Plaintiffs*, <br><br> v. <br><br> BOLIVARIAN REPUBLIC OF VENEZUELA, <br><br> *Defendant*. | C.A. 1:22-MC-00464-LPS |

**PLAINTIFFS' REPLY BRIEF IN FURTHER SUPPORT OF THEIR MOTION FOR AN ORDER AUTHORIZING THE ISSUANCE OF A WRIT OF *FIERI FACIAS* AND IN OPPOSITION TO PDVSA'S MOTION TO DISMISS**

Ross Aronstam & Moritz LLP

*Of Counsel*:

Michael S. Kim
Marcus J. Green
Josef M. Klazen
Kobre & Kim LLP
800 Third Avenue
New York, NY 10022
(212) 488-1200
michael.kim@kobrekim.com
marcus.green@kobrekim.com
jef.klazen@kobrekim.com

Garrett B. Moritz (Bar No. 5646)
Elizabeth M. Taylor (Bar No. 6468)
Hercules Building
1313 North Market Street, Suite 1001
Wilmington, DE 19801
(302) 576-1600
gmoritz@ramllp.com
etaylor@ramllp.com

*Attorneys for Plaintiffs*

Dated:  October 6, 2023

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

SUMMARY OF ARGUMENT ................................................................................................ 4

BACKGROUND ...................................................................................................................... 5

   I.   The Contracts ................................................................................................................ 5

   II.   The ICSID Arbitration ................................................................................................ 6

   III.  The ICC Arbitration.................................................................................................... 9

ARGUMENT .......................................................................................................................... 10

   I.   Judicial Estoppel Does Not Bar ConocoPhillips' Motion ................................... 10

   II.   Collateral Estoppel and Res Judicata Are Inapplicable ....................................... 14

   III.  Federal Law Governs the Alter Ego Determination............................................. 16

   IV.  The PDVH Shares Are Not Immune from Attachment and Execution............................. 19

   V.   The Equities Weigh in Favor of Issuing the Writ ............................................... 19

CONCLUSION......................................................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**                                                                              **Page(s)**

*Cleveland v. Policy Mgmt. Sys. Corp.*,
   526 U.S. 795 (1999) ................................................................................................ 12

*Crystallex Int'l Corp. v. Bolivarian Republic of Venez.*,
   333 F. Supp. 3d 380 (D. Del. 2018) ................................................ 3, 12, 16, 18, 19

*Crystallex Int'l Corp. v. Bolivarian Republic of Venez.*,
   932 F.3d 126 (3d Cir. 2019) ............................................................ 3, 12, 18, 19

*Crystallex Int'l Corp. v. Bolivarian Republic of Venez.*,
   2021 WL 129803 (D. Del. Jan. 14, 2021) ................................................................ 16

*Dentsply Int'l, Inc.*,
   602 F.3d 237 (3d Cir. 2010) .................................................................................... 14

*Duhaney v. Att'y Gen. of U.S.*,
   621 F.3d 340 (3d Cir. 2010) .............................................................................. 15, 16

*Geyer v. Ingersoll Publ'ns Co.*,
   621 A.2d 784 (Del. Ch. 1992) ................................................................................ 18

*Hawksbill Sea Turtle v. Fed. Emergency Mgmt. Agency*,
   126 F.3d 461 (3d Cir. 1997) .................................................................................... 14

*Henglein v. Colt Indus.*,
   260 F.3d 201 (3d Cir. 2001) .................................................................................... 14

*In re Brown*,
   951 F.2d 564 (3d Cir. 1991) .................................................................................... 18

*In re Kane*,
   628 F.3d 631 (3d Cir. 2010) .................................................................................... 12

*Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*,
   337 F.3d 314 (3d Cir. 2003) .................................................................................... 13

*Meadows v. Dominican Republic*,
   817 F.2d 517 (9th Cir. 1987) ................................................................................... 17

*Microsoft Corp. v. Amphus, Inc.*,
   2013 WL 5899003 (Del. Ch. Oct. 31, 2013) ......................................................... 18

*Montrose Med. Grp. Participating Sav. Plan v. Bulger*,
   243 F.3d 773 (3d Cir. 2001) ............................................................................... 10, 13

*Nat'l Med. Imaging, LLC v. Ashland Funding LLC*,
   648 F. App'x 251 (3d Cir. 2016) ......................................................................... 15, 16

*OI European Grp. B.V. v. Bolivarian Republic of Venez.*,
   73 F.4th 157, 163, WL 4385930 (3d Cir. 2023) ................................... 3, 16, 18, 19

*OI European Grp. B.V. v. Bolivarian Republic of Venez.*,
   2023 WL 2609248 (D. Del. Mar. 23, 2023) ........................................................ 3, 19

*Republic of Argentina v. NML Capital, Ltd.*,
   573 U.S. 134 (2014) .................................................................................................. 17

*Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*,
   81 F.3d 355 (3d Cir. 1996) ...................................................................................... 14

*Scarano v. Central R. Co. of N.J.*,
   203 F.2d 510 (3d Cir.1953) ...................................................................................... 13

*Suppan v. Dadonna*,
   203 F.3d 228 (3d Cir.2000) .......................................................................... 14, 15, 16

*Trs. Of Nat'l Elevator Indus. Pension, Health Benefit & Educ. Funds v. Lutyk*,
   332 F.3d 188 (3d Cir. 2003) ..................................................................................... 17

*Weinstein v. Islamic Republic of Iran*,
   831 F.3d 470 (D.C. Cir. 2016) ................................................................................. 17

**Statutes**

28 U.S.C. § 1963 ............................................................................................................. 4

**Rules**

Federal Rule of Civil Procedure 69 ...................................................................... 1, 16, 17

ConocoPhillips Petrozuata B.V., ConocoPhillips Hamaca B.V., and ConocoPhillips Gulf of Paria B.V. (collectively "ConocoPhillips") respectfully submit this brief in support of their motion D.I. 2, pursuant to Federal Rule of Civil Procedure 69, the Delaware Code, and the Foreign Sovereign Immunities Act (the "FSIA"), for an order authorizing the issuance of a writ of *fieri facias* ("*fi fa* writ") against the shares of PDV Holding, Inc. ("PDVH") owned by Petróleos de Venezuela S.A. ("PDVSA") and in opposition to PDVSA's motion to dismiss.  D.I. 11.

### PRELIMINARY STATEMENT

Over the years, Venezuela and PDVSA have shown that they will deploy virtually any argument and procedural maneuver to frustrate and evade their creditors. Now, faced with enforcement of ConocoPhillips' $8.5 billion judgment on its ICSID award, they offer their latest example of litigation maneuvering.  On the one hand they concede, as they must, that this Court has already ruled that (i) PDVSA is Venezuela's alter ego for purposes of execution in Delaware on the PDVH shares and (ii) the shares are not immune from execution.  Nevertheless, Venezuela and PDVSA seek to avoid these rulings by arguing that ConocoPhillips is estopped from enforcing its $8.5 billion judgment based on mischaracterizations of the record in ConocoPhillips' arbitrations against PDVSA, PDVSA subsidiaries and Venezuela.  Thin on quotations from ConocoPhillips' arguments in the arbitrations, PDVSA and Venezuela use a broad brush to try to *characterize* ConocoPhillips' Venezuelan and international law arguments in the arbitrations, trying to mislead the Court that ConocoPhillips is now taking inconsistent positions.  *See* D.I. 12, 17.  PDVSA and Venezuela are wrong on the facts and the law.  The issue in this action is whether Venezuela's control of PDVSA's assets in the United States has rendered the PDVH shares available to satisfy Venezuela's debts today.  That question could not have been litigated or resolved, and was not litigated or resolved, in those arbitrations.

In an ICC arbitration against PDVSA, a group of ConocoPhillips subsidiaries argued that PDVSA had "willfully breached" its obligations when it assisted Venezuela's 2007 expropriation of ConocoPhillips' investments, and that PDVSA could not rely on limitations on certain contractual indemnities to avoid compensating the ConocoPhillips subsidiaries in full.  If that argument succeeded, PDVSA could have been liable under Venezuelan law for the entire value of ConocoPhillips' losses from Venezuela's expropriation.  But PDVSA defeated ConocoPhillips' willful breach argument and that tribunal rendered an award against PDVSA on a different claim for approximately $1.9 billion plus interest, far less than ConocoPhillips' full loss.  That decision has no bearing on whether the PDVH shares are available to satisfy Venezuela's debts—which is an issue that was not before, and not in any way resolved by, the ICC tribunal.

In its ICSID arbitration against Venezuela, a group of ConocoPhillips subsidiaries argued that Venezuela could not invoke the cap on compensation contained in the contracts between ConocoPhillips and PDVSA's subsidiaries (to which Venezuela was not a party) to avoid or limit Venezuela's separate liability under international law.  ConocoPhillips argued that the contract counterparties and Venezuela each had separate sources of obligations to ConocoPhillips. ConocoPhillips' argument prevailed and the ICSID tribunal rendered an award against Venezuela for about $8.5 billion plus interest.  ConocoPhillips argued that PDVSA's subsidiaries' contractual liabilities were distinct from Venezuela's international law obligations, but ConocoPhillips never argued that Venezuela and PDVSA, much less the ownership of PDVSA's Delaware assets, should be treated as legally separate and distinct for all purposes and for all time.  That issue was not before, and not resolved by, the ICSID tribunal.

But even if the ConocoPhillips parties in the arbitrations had raised the issue of PDVSA's alter ego relationship with Venezuela, those arbitrations were argued under Venezuelan and

international law, concerned different standards and rules from those applying to questions of corporate separateness under federal common law, and occurred at a different time.  The only question in this proceeding is whether PDVSA's property in Delaware should—in 2023—be treated as the property of Venezuela for purposes of execution.  Further, and fatal to their judicial estoppel argument, Venezuela and PDVSA cannot seriously contend that ConocoPhillips is acting in bad faith by simply requesting that the Court apply its prior alter ego findings in *Crystallex* and *OIEG* for the benefit of ConocoPhillips now.

ConocoPhillips stands by its prior allegations in the arbitrations.  ConocoPhillips' arbitration positions are entirely compatible with this Court's and the Third Circuit's rulings in *Crystallex* and *OIEG* that the PDVH shares are available to satisfy Venezuela's debts.

Whether the PDVH shares are subject to execution by Venezuela's creditors, or immune under the FSIA, has already been decided by this Court and affirmed by the Third Circuit.  *See Crystallex Int'l Corp v. Bolivarian Republic of Venez.*, 333 F. Supp. 3d 380, 406 (D. Del. 2018); *Crystallex Int'l Corp v. Bolivarian Republic of Venez.*, 932 F.3d 126, 152 (3d Cir. 2019); *OI European Grp. B.V. v. Bolivarian Republic of Venez.*, No. 19-mc-290-LPS, 2023 WL 2609248, at *18 (D. Del. Mar. 23, 2023),  *aff'd OI European Grp. B.V. v. Bolivarian Republic of Venez.*, 73 F.4th 157 (3d Cir. 2023).  And PDVSA "does not challenge this Court's determination that PDVSA is [Venezuela's] alter ego in *Crystallex* and *OIEG* and the other cases pending before this Court in which creditors of [Venezuela] have sought to attach and execute upon the PDVH shares." D.I. 12 at 1.  Venezuela has sought Supreme Court review of the Third Circuit's application of *Bancec* in *OI European Grp.*, 73 F.4th 157; D.I. 17 at 4.

ConocoPhillips is a judgment creditor of Venezuela.  *See* D.I. 1.  Venezuela did not contest recognition of the $8.5 billion award as a judgment of the U.S. District Court for the District of

Columbia.  Under 28 U.S.C. § 1963, this Court is required to enforce that judgment as if this Court rendered it.   Given this Court's and the Third Circuit's rulings in *Crystallex* and *OIEG*, ConocoPhillips is entitled to a *fi fa* writ against the PDVH shares.  Granting this Motion is therefore straightforward and should not be controversial.

## SUMMARY OF ARGUMENT

1.      Judicial estoppel does not bar ConocoPhillips' Motion because there is no inconsistency between: (i) ConocoPhillips' position in the ICSID Arbitration that Venezuela had obligations under international law that were independent of any contractual liability limitations negotiated between ConocoPhillips and PDVSA's subsidiaries and (ii) the claim that PDVH shares are available to pay Venezuela's debts in this enforcement proceeding.

2.      Judicial estoppel does not bar ConocoPhillips' Motion because ConocoPhillips has not adopted any position or advanced any argument in "bad faith."  ConocoPhillips asks the Court merely to apply and repeat its prior holdings in *Crystallex* and *OIEG* that the PDVH shares are subject to execution by ConocoPhillips, a creditor of Venezuela, as PDVSA's alter ego.

3.      Collateral estoppel and res judicata are inapplicable because the claims and issues litigated in the ICC Arbitration and the claims and issues before the Court on this Motion are not the same.  The decision of the ICC Arbitration tribunal rejecting ConocoPhillips' argument under Venezuelan law that PDVSA *willfully* breached its obligations (through its role in bringing about the nationalization) did not decide any issue or claim in this enforcement proceeding.

4.      Federal law governs the alter ego determination as decided by the Court in *Crystallex* and *OIEG*.   Those rulings were affirmed by the Third Circuit.  Even if this Court were to apply Delaware law, PDVSA would be deemed Venezuela's alter ego.

5.      The PDVH shares are not immune from attachment and execution.   The Court in *Crystallex* decided the issue and the same facts apply here where PDVSA's continued commercial use of those shares continue through today, necessitating the same ruling.

6.      The prior decisions of this Court and the Third Circuit require, and the equities weigh in favor of, granting ConocoPhillips' Motion.

## BACKGROUND

### I.      The Contracts

ConocoPhillips held interests in three crude oil projects in Venezuela, known as the Petrozuata, Hamaca and Corocoro projects (the "Projects").  ConocoPhillips' claims in the ICSID and ICC Arbitrations (as defined below) arose from a series of actions taken by Venezuela and PDVSA that culminated in the unlawful expropriation of ConocoPhillips' interests in the Projects.

The Projects were structured via contracts (the "Association Agreements") executed between various ConocoPhillips entities and certain subsidiaries of PDVSA:

1. The Petrozuata Association Agreement (dated November 10, 1995, and modified June 18, 1997) was concluded between Conoco Orinoco Inc., of which ConocoPhillips Petrozuata B.V. is the successor in interest, and Maraven S.A., a PDVSA subsidiary of which PDVSA Petróleo is the successor in interest.  *See* D.I. 13-1, ¶ 120; D.I. 13-3, ¶ 19.

2. The Hamaca Association Agreement (dated July 9, 1997) was concluded between (among others) Phillips Petroleum Company Venezuela Limited (which ultimately transferred its interest to ConocoPhillips Hamaca B.V.) and Corpoguanipa, S.A., a PDVSA subsidiary.  *See* D.I. 13-1, ¶¶ 153, 163–65; D.I. 13-3, ¶ 22.

3. The Corocoro Association Agreement (dated July 10, 1996) was concluded between Conoco Venezuela B.V. and Corporación Venezolana del Petróleo, S.A., a PDVSA subsidiary.  *See* D.I. 13-1, ¶ 176.

The Petrozuata and Hamaca Association Agreements contained partial indemnities by which the PDVSA subsidiaries promised to compensate the ConocoPhillips parties if Venezuela took certain acts that came within the contractual definition of a "Discriminatory Action."  The

amount of compensation that could be paid as a result of a Discriminatory Action was subject to certain limitations.  *See* D.I. 13-3, ¶¶ 19, 22–23, 100–03, 106–08, 1092.

PDVSA guaranteed the performance of its subsidiaries (including any payments owed under the Discriminatory Action provisions) in separate guarantees that accompanied the Association Agreements (the "Guarantees").  *See* D.I. 13-3, ¶¶ 19, 22–23.  Venezuela was not a party to the Association Agreements or the Guarantees.  In 2007, Venezuela expropriated all three Projects.  *See* D.I. 13-1, ¶¶ 190, 193–208.  ConocoPhillips commenced three arbitrations, two of which are pertinent here and detailed below.

## II.    The ICSID Arbitration

In November 2007, ConocoPhillips Petrozuata B.V., ConocoPhillips Hamaca B.V. and ConocoPhillips Gulf of Paria B.V., the judgment creditors in this action, brought an arbitration claim against Venezuela seeking compensation for, *inter alia*, Venezuela's unlawful expropriation of ConocoPhillips' investments in the Projects in violation of the Netherlands-Venezuela Bilateral Investment Treaty (the "Treaty") and international law (the "ICSID Arbitration").  *See* D.I. 13-1, ¶¶ 1, 10; D.I. 4-1, Ex. 3, ¶ 1.

One question that the tribunal in the ICSID Arbitration had to resolve was:  *Is Venezuela's potential liability under the Treaty and international law for the 2007 expropriation limited to the amount of compensation that PDVSA Petróleo and Corpoguanipa could owe for a Discriminatory Action under the Venezuelan law-governed Association Agreements?*  *See* D.I. 4-1, Ex. 3, ¶¶ 93, 159, 168.

ConocoPhillips argued that Venezuela's liability under the Treaty and international law was not limited by the obligations of PDVSA Petróleo and Corpoguanipa in the Association Agreements, and that the Treaty and international law required Venezuela to compensate

ConocoPhillips for the full value of the interests that Venezuela had expropriated.  *See* D.I. 4-1, Ex. 3, ¶¶ 94–96, 112.

Venezuela took the position that its liability for the expropriation (an international law claim under the Treaty) could be no more than the amounts owed by the PDVSA subsidiaries to ConocoPhillips under the Association Agreements' Discriminatory Action provisions.  According to Venezuela, because ConocoPhillips had agreed to the Association Agreements, ConocoPhillips had agreed that in the event of a breach of the Treaty, its compensation would be limited to the amounts available under the Discriminatory Action contract provisions.  *See* D.I. 4-1, Ex. 3, ¶¶ 113, 115–16, 128–29.  In other words, Venezuela argued that ConocoPhillips' sole remedy under the Treaty for an expropriation was compensation through the contractual Discriminatory Action provisions.  *See* D.I. 4-1, Ex. 3, ¶¶ 116, 156.

In response, ConocoPhillips explained to the tribunal that any compensation that ConocoPhillips may be entitled to from PDVSA Petróleo and Corpoguanipa under the Association Agreements or from PDVSA under the Guarantees (all of which were Venezuelan law-governed contracts to which Venezuela was not a party) was separate and distinct from the compensation Venezuela owed for its own independent breaches of international law.  *See* D.I. 4-1, Ex. 3, ¶¶ 94–96.  ConocoPhillips argued that nothing in the Venezuelan law-governed Association Agreements constituted a waiver of ConocoPhillips' remedies against Venezuela under the Treaty or international law.  *See* D.I. 4-1, Ex. 3, ¶ 105.  Therefore, the partial contractual indemnities payable by PDVSA Petróleo and Corpoguanipa (and guaranteed by PDVSA) could not limit the potential compensation from Venezuela for breaches of the Treaty.  *See* D.I. 4-1, Ex. 3, ¶¶ 96, 99.  It was in this context that ConocoPhillips asserted in the ICSID Arbitration that contract causes of action

against PDVSA were "separate and distinct from Treaty claims" against Venezuela.  *See* D.I. 12

at 6.

In its submission in the ICSID Arbitration, ConocoPhillips argued that:

> The [Discriminatory Action] provisions evidence that they are irrelevant to the compensation owed by Venezuela under international law for the taking of the Claimants' investments. They are partial contractual indemnities payable by PDVSA affiliates. They do not purport to address Venezuela's obligations for its own wrongful conduct. They do not limit the profits of any Project participant, nor do they impose any limit on the fair market value of the Claimants' project interests.

D.I. 4-1, Ex. 3, ¶ 99.

ConocoPhillips further argued, in the excerpt cited and reproduced by PDVSA in its

opening brief, D.I. 12 at 6:

> [The] Association Agreements were limited to the reciprocal rights and obligations of the parties to those Agreements. PDVSA and its subsidiaries were authorized to agree to take some degree of indemnity upon themselves. They could not and did not purport to agree to impose obligations on the State; that matter was outside the scope of the Agreements and was governed by other sources of State obligations, including international law.

D.I. 4-1, Ex. 3, ¶ 106.

In its final award, the ICSID tribunal agreed with ConocoPhillips, concluding that the

Discriminatory Action provisions in the Association Agreements did not limit compensation owed

by Venezuela under the Treaty or international law.  *See* D.I. 4-1, Ex. 3, ¶¶ 169–71.  The ICSID

tribunal noted that the Association Agreements did not provide an exclusive remedy for adverse

governmental action, and that ConocoPhillips had not waived its rights under international law by

virtue of their participation in the Projects.  *See* D.I. 4-1, Ex. 3, ¶¶ 173–74, 176–77, 183.  Thus,

the tribunal calculated compensation for Venezuela's breach of the Treaty on the basis of

international law.  *See* D.I. 4-1, Ex. 3, ¶ 227.

### III.   The ICC Arbitration

In October 2014, Phillips Petroleum Company Venezuela Limited and ConocoPhillips Petrozuata B.V. brought arbitration claims against PDVSA (under the Guarantees), and against Corpoguanipa and PDVSA Petróleo (under the Association Agreements) (the "ICC Arbitration"). *See* D.I. 13-3, ¶¶ 1, 4, 9, 31, 80–84.

One issue in the ICC Arbitration was: *Are the respondents contractually liable under Venezuelan law for willful breach[1] of their obligations in the Association Agreements and Guarantees because of their role in bringing about the nationalization of the claimants' interests in the Projects?*  D.I. 13-3, ¶¶ 29, 65, 295.

To support the "willful breach" claim, the ConocoPhillips parties argued, *inter alia*, that the respondents had engaged in acts—prior to the 2007 expropriation—aimed at ultimately dispossessing the ConocoPhillips parties of their interests, including by (i) failing to protest or lobby against certain tax and royalty increases that negatively impacted ConocoPhillips' interests in the Projects and were precursors to the expropriation; and (ii) participating (through the President of PDVSA and a non-executive director on the PDVSA board) in bringing about Venezuela's nationalization of its oil industry.  D.I. 13-3, ¶¶ 348–49, 400–01.  ConocoPhillips also argued that the respondents could not escape liability by claiming that they had only acted "in compliance with the law"—*i.e.*, the *2007 Nationalization Decree* that ultimately led to the expropriation—because the respondents' acts had contributed to the issuance of that decree.  D.I. 13-3, ¶¶ 444–49, 457.

---

[1] To make out a claim for willful breach under Articles 1264 and 1271 of the Venezuelan Civil Code, the plaintiff must prove (i) the existence of a contractual obligation; (ii) breach of that obligation; (iii) non-excusable "culpable character of the breach"; (iv) damages; and (v) causation. D.I. 13-3, ¶ 329.

ConocoPhillips thus argued that because the respondents had "willfully breached" their obligations under the Association Agreements and Guarantees, they were liable under Venezuelan law to compensate ConocoPhillips for the full value of its investments.  D.I. 13-3, ¶ 65.  The tribunal in the ICC Arbitration ordered Corpoguanipa and PDVSA Petróleo to pay compensation to ConocoPhillips under the Association Agreements' Discriminatory Action provisions, and it held PDVSA jointly and severally liable for that obligation pursuant to the Guarantees.  The Tribunal, however, dismissed ConocoPhillips' willful breach claim.  D.I. 13-3, ¶ 1163.

## ARGUMENT

### I.   Judicial Estoppel Does Not Bar ConocoPhillips' Motion

Venezuela and PDVSA argue that ConocoPhillips should be judicially estopped from arguing alter ego here because, according to PDVSA, ConocoPhillips claimed in the ICSID Arbitration that Venezuela and PDVSA were "separate entities, with distinct liabilities."  *See* D.I. 12 at 6.  PDVSA and Venezuela contend that because ConocoPhillips successfully argued that the contracts with PDVSA's subsidiaries did not cap Venezuela's liability, and accordingly received an uncapped damages award, that ConocoPhillips is somehow estopped from enforcing that award against the assets of PDVSA.  But judicial estoppel is not applicable here.

Judicial estoppel may only be applied when:  (i) the party to be estopped has taken positions that are irreconcilably inconsistent; (ii) the party changed its position in bad faith; and (iii) no lesser sanction would adequately remedy the damage done by the party's misconduct. *Montrose Med. Grp. Participating Sav. Plan v. Bulger*, 243 F.3d 773, 777-780 (3d Cir. 2001).  All three of these elements must be satisfied.  *Id.*  None is satisfied here.

### a. ConocoPhillips' Position in the ICSID Arbitration Is Not Inconsistent with Venezuela's Control of PDVSA's Assets in the United States

ConocoPhillips has not taken irreconcilably inconsistent positions as between this Motion and the ICSID Arbitration. Here, ConocoPhillips argues, as other creditors of Venezuela have already done successfully, that PDVSA is the alter ego of Venezuela such that ConocoPhillips can enforce its judgment against the PDVH shares.

In the ICSID Arbitration, ConocoPhillips argued that Venezuela owed obligations under the Treaty and international law separate and apart from the obligations of PDVSA and its subsidiaries under the Association Agreements and Guarantees. There is nothing irreconcilably inconsistent between that argument and seeking to execute against PDVSA's property in Delaware as Venezuela's alter ego (as has been decided in *Crystallex* and *OIEG*).

The positions cannot be inconsistent. They are addressed to fundamentally distinct issues. In the ICSID Arbitration, Venezuela attempted to limit its own liability through the invocation of the partial indemnities given by the PDVSA subsidiaries and guaranteed by PDVSA. *See* D.I. 4-1, Ex. 3, ¶¶ 113, 115–16, 128–29. ConocoPhillips defeated that attempt by proving to the tribunal that the sources of the obligations were distinct as between Venezuela (the Treaty and international law) and the PDVSA subsidiaries (the Association Agreements). *See* D.I. 4-1, Ex. 3, ¶¶ 169–71. In no way were the parties arguing about "alter ego" issues in the ICSID Arbitration.

In any event, this position taken on *liability* cannot have preclusive effect with respect to a position taken to support *enforcement* after liability has been determined. The liability stage and enforcement stage of a case constitute two different contexts for the application of alter ego doctrines. This Court has explained the difference between the alter ego analysis for purposes of extending *liability* to another party, and the alter ego analysis required here for purposes of determining which assets *are subject to execution*. For alter ego liability, the "creditor seeks to

establish that the alleged alter ego is liable for the original judgment, and thus obtain a new judgment against the alter ego," whereas at the enforcement stage "the judgment creditor seeks a more limited finding, namely that the specific property at issue . . . though nominally held in the name of [a third party, is], at this time, really the property of the [judgment debtor]."  *See Crystallex*, 333 F. Supp. 3d 380, 394 (D. Del. 2018), *aff'd and remanded*, 932 F.3d 126 (3d Cir. 2019) (internal quotations omitted).

Here, as in *Crystallex,* ConocoPhillips is not seeking to shift liability for the judgment recognizing the ICSID award to PDVSA; it is merely seeking to enforce its judgment against the PDVH shares in Delaware that belong to Venezuela but are held nominally by PDVSA. ConocoPhillips, like Crystallex, "seek[s] only to collect a judgment but not to establish liability." *Id.*  ConocoPhillips' prior arguments on distinct sources of liabilities as between PDVSA and Venezuela are neither inconsistent with this Motion nor relevant to the question before the Court, which is whether Venezuela's judgment creditors can execute against the PDVH shares.

Where the purportedly inconsistent positions are taken in two entirely different contexts, judicial estoppel is inapplicable.  For example, in *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795 (1999), the Supreme Court found estoppel inapplicable where a movant had applied for benefits claiming she was "disabled" and "unable to work," but in a later suit submitted that she could "perform the essential functions" of a job "with . . . a reasonable accommodation," holding that the different contexts of the statements rendered them not inconsistent.  526 U.S. at 797–99. The Supreme Court also observed that each statement needed to be considered for accuracy "in the time period in which they were made."  *Id.* at 807 (remanding for consideration on this point). *See also In re Kane*, 628 F.3d 631, 639 (3d Cir. 2010) (declining to apply judicial estoppel where

the inconsistent positions were taken between a bankruptcy and a divorce proceeding given the different context in which each statement was made and the time between the submissions).

### b.  There Is No Bad Faith Change in Position

ConocoPhillips has not "changed its position in bad faith."   The Third Circuit has consistently held that judicial estoppel should be applied very narrowly and only where there is manifest evidence of an intent to use the differing positions in bad faith.  *See Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314, 319 (3d Cir. 2003) ("the doctrine should only be applied to avoid a miscarriage of justice"); *Montrose Med. Grp.*, 243 F.3d at 781 (judicial estoppel should only be used to "sanction malfeasance"); *Scarano v. Cent. R. Co. of N.J.*, 203 F.2d 510, 513 (3d Cir.1953) ("An inconsistent argument sufficient to invoke judicial estoppel must be attributable to intentional wrongdoing").

As explained above, ConocoPhillips has not changed its position at all.  And even assuming there was a change in position, it could not under the circumstances constitute bad faith or an "affront to the court's authority or integrity." *See Montrose Med. Grp.*, 243 F.3d at 778.

In the ICSID Arbitration, ConocoPhillips successfully opposed Venezuela's attempt to invoke the limitations on liability contained in contracts to which Venezuela was not a party. ConocoPhillips prevailed on its argument in the ICSID Arbitration that ConocoPhillips never waived, and instead insisted on enforcing, its independent rights against Venezuela under international law.  Here, ConocoPhillips now invites the Court merely to apply and repeat its prior holdings in *Crystallex* and *OIEG* that the PDVH shares are subject to execution by ConocoPhillips, a creditor of Venezuela, as PDVSA's alter ego.

Asking the Court to apply or repeat findings already made by the Court in *Crystallex* and *OIEG* plainly cannot constitute an "affront to the court's authority or integrity." *See Montrose*

*Med. Grp.*, 243 F.3d at 778.  *See also Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355 (3d Cir. 1996) (it is "undisputed" that the positions are inconsistent, but the court declines to apply estoppel because the bad faith prong has not been satisfied).

PDVSA and Venezuela have not satisfied their burden of proving the elements of judicial estoppel.  *See e.g.*, *Suppan v. Dadonna*, 203 F.3d 228, 233 (3d Cir. 2000) (the party seeking to effectuate an estoppel has the burden of demonstrating the propriety of its application); *Dici v. Pennsylvania,* 91 F.3d 542, 548 (3d Cir. 1996) (the party seeking to invoke collateral estoppel bears the burden of proving each of its elements).  Seeking in the execution proceedings before this Court to collect from PDVSA's assets on the basis of an alter ego theory is a distinct legal issue from the issues in the arbitrations.  The Court should deny PDVSA's motion.

## II. Collateral Estoppel and Res Judicata Are Inapplicable

Venezuela and PDVSA's arguments about collateral estoppel and res judicata are equally misplaced.  PDVSA and Venezuela assert that ConocoPhillips argued in the ICC Arbitration that Venezuela and PDVSA were "effectively one and the same" when seeking to hold PDVSA liable for the full extent of Venezuela's expropriation (*see* D.I. 12 at 7), and they argue that this is identical to the alter ego theory on which this enforcement action relies.  This mischaracterizes ConocoPhillips' willful breach argument under Venezuelan law in the ICC Arbitration.

For collateral estoppel to apply, the following four elements must be met: (i) the identical issue was previously adjudicated; (ii) the issue was actually litigated; (iii) the previous determination was necessary to the decision; and (iv) the party being precluded from relitigating the issue was fully represented in the prior action.  *See, e.g.*, *Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc*., 602 F.3d 237, 247-48 (3d Cir. 2010); *Henglein v. Colt Indus.*, 260 F.3d 201, 209 (3d Cir. 2001); *Hawksbill Sea Turtle v. Fed. Emergency Mgmt. Agency*, 126 F.3d 461,475 (3d

Cir. 1997).  Res judicata, or claim preclusion, requires proof that there has been a final judgment rendered on the *same claim* between the same parties or their privies.  *See Duhaney v. Att'y Gen. of U.S.*, 621 F.3d 340, 347 (3d Cir. 2010).

There can be no collateral estoppel or claim preclusion because the claims and issues litigated in the ICC Arbitration and the claims and issues before the Court on this Motion are not the same.  The decision of the ICC Arbitration tribunal rejecting ConocoPhillips' argument that PDVSA willfully breached its contractual obligations when it procured Venezuela's *2007 Nationalization Decree* did not decide any issue or claim in this enforcement proceeding.

Issues are considered identical for collateral estoppel purposes where "the same general legal rules govern both cases and that the facts of both cases are indistinguishable as measured by those rules."  *Suppan*, 203 F.3d at 233.  As a result, issues are not identical if any difference between the two cases "has legal significance."  *Nat'l Med. Imaging, LLC v. Ashland Funding LLC*, 648 F. App'x 251, 256 (3d Cir. 2016).

In the ICC Arbitration, a group of ConocoPhillips subsidiaries unsuccessfully argued that PDVSA should be liable for the full extent of ConocoPhillips' losses caused by the expropriation because PDVSA committed a "willful breach" of contract under Venezuelan law, based on facts showing that PDVSA's conduct contributed to Venezuela's 2007 nationalization of the Projects and the deprivation of ConocoPhillips' rights. *See* D.I. 13-3, ¶¶ 348–49, 400–01. The legal rules governing the determination of that issue came from Venezuelan law. *See* D.I. 13-3, ¶ 65.

A totally different issue is present in this case. Here, in support of ConocoPhillips' enforcement claim, a group of ConocoPhillips subsidiaries asks the Court to permit execution on the PDVH shares based on facts relevant to the *Bancec* analysis and the Court's prior rulings or, alternatively, based on Delaware law. *See* D.I. 6 at 9-1.  Under those rules, the relevant factual

time period for conducting the alter ego analysis is "the time of the service of the writ of attachment" including consideration of "all relevant facts" up to the time of enforcement. *See OIEG v. Bolivarian Republic of Venez.*, 73 F.4th 157, 171–72 (3d Cir. 2023); *see also Crystallex Int'l Corp v. Bolivarian Republic of Venez.*, 2021 WL 129803, at *6 (D. Del. Jan. 14, 2021).

This analysis is informed by contemporary facts including, *inter alia*, with respect to the administrations of both Juan Guaidó and Nicolás Maduro, the power of Venezuela over PDVSA through the *2019 Transition Statute* and its successive amendments; the competing sovereign acts of the Maduro and Guaido governments, including the two different governing boards of PDVSA and acts taken at their direction, and the use of PDVSA property in the United States by the two competing representatives of the Venezuelan government. *See, e.g.,* D.I. 5, Gomez Decl. at ¶ 10.

Those factual considerations and legal rules for the claim made by this Motion are plainly distinguishable from the facts proffered by ConocoPhillips in the ICC Arbitration to support its claim to hold PDVSA fully liable under Venezuelan law for the losses caused by Venezuela's expropriation in 2007. Neither collateral estoppel nor claim preclusion can apply. *See, e.g.*, *Suppan*, 203 F.3d at 233; *Nat'l Med. Imaging*, 648 F. App'x at 256; *Duhaney*, 621 F.3d at 348.

## III.    Federal Law Governs the Alter Ego Determination

Venezuela argues that Federal Rule of Civil Procedure 69 requires the Court to apply Delaware law to determine whether PDVSA is Venezuela's alter ego for purposes of this Motion. *See* D.I. 17 at 5-7. Venezuela is wrong, and this has already been decided.

This Court and the Third Circuit have held that: (1) federal common law, specifically *Bancec*, governs the question of alter ego for purposes of this Motion; and (2) under *Bancec*, PDVSA is Venezuela's alter ego, such that the PDVH shares are subject to attachment by a creditor of Venezuela. *See Crystallex*, 333 F. Supp. At 380, 396–97; *OIEG*, 2023 WL 2609248, at *29.

16

PDVSA and Venezuela even stipulated that the Third Circuit's decision in *OIEG* resolved the issue of PDVSA's alter ego status and the requirements to attach the shares of PDVH under the FSIA. *See, e.g.*, *Lovati et al. v. Bolivarian Republic of Venez.*, No. 1:23-mc-00340 (D. Del. 2023), D.I. 11, at 2.

Venezuela cites no authority holding that Rule 69 requires the application of substantive state alter ego law.[2]  The language of Rule 69 does not suggest otherwise because it incorporates only local state execution "procedure" and not the substantive question of the alter ego relationship at issue here.  *See* Fed. R. Civ. P. 69(a) ("The *procedure* on execution . . . must accord with the *procedure* of the state where the court is located") (emphasis added).[3]  Because the standard for alter ego liability is substantive, not procedural, Delaware's law does not govern pursuant to Rule 69, and ConocoPhillips need not satisfy a second alter ego standard under Delaware law.  *See, e.g.*, *Trs. of Nat'l Elevator Indus. Pension, Health Benefit & Educ. Funds v. Lutyk*, 332 F.3d 188, 192 (3d Cir. 2003) (finding Delaware's alter ego doctrine is not a "procedure"); *Meadows v. Dominican Republic*, 817 F.2d 517, 524 (9th Cir. 1987) ("attribution of liability among instrumentalities of a foreign state is a matter of substantive law.").

---

[2] Venezuela cites inapposite Supreme Court authority to suggest the Supreme Court rejected an argument that FISA overrides Rule 69. *See* D.I. 17 at 6 (citing *Republic of Argentina v. NML Capital, Ltd.*, 573 U.S. 134, 138-40, 143 n.3 (2014)). That case involved the scope of post-judgment discovery under Rule 69(a)(2) and mentions Rule 69(a)(1), the provision at issue here, only to reject an argument that it should be read onto Rule 69(a)(2). It has no impact on the Court's ruling under *Bancec*.

[3] Venezuela asks the Court to look back to Advisory Committee notes from the original enactment of Rule 69 in 1937. However, Rule 69 contains "significant limiting language" that is "materially different" from that of its predecessor, which incorporated substantive state law "wholesale." *Weinstein v. Islamic Republic of Iran*, 831 F.3d 470, 480-81 n.18 (D.C. Cir. 2016).

In both *Crystallex* and *OIEG*, the Court considered arguments from PDVSA and Venezuela[4] and decided the issue of what law applies to the determination of whether PDVSA is the alter ego of Venezuela for purposes of attaching PDVSA's Delaware property in satisfaction of a judgment held against Venezuela.[5]   Those rulings were affirmed by the Third Circuit. *Crystallex II*, 932 F.3d 126, 152 (3d Cir. 2019) (finding *Bancec* governs both "substantive liability" and "jurisdiction"); *OIEG II*, 73 F.4th 157, 176 (3d Cir. 2023) (affirming on the narrower question on appeal regarding jurisdiction of the FSIA).[6]

Even if this Court were to abandon its prior rulings and find that Delaware law applies to the alter ego determination here, PDVSA would be deemed Venezuela's alter ego.   Under Delaware law, courts have pierced the corporate veil "'where a subsidiary is in fact a mere instrumentality or alter ego of its owner.'" *Microsoft Corp. v. Amphus, Inc.*, 2013 WL 5899003, at *6–7 (Del. Ch. Oct. 31, 2013) (quoting *Geyer v. Ingersoll Publ'ns Co.*, 621 A.2d 784, 793 (Del. Ch. 1992)); *see also Microsoft Corp.*, 2013 WL 5899003, at *6 (A subsidiary may be the alter ego of its parent "when the two 'operate[] as a single economic entity such that it would be inequitable for this Court to uphold a legal distinction between them.'").   PDVSA is a "mere instrumentality"

---

[4] *See, e.g.*, PDVSA Br., No. 17 Misc. 151, D.I. 26 at 13-15 (D. Del. Nov. 3, 2017); PDVSA Br. No. 19 Misc. 290, D.I. 65 at 31-35 (D. Del. Apr. 2, 2021).

[5] *See Crystallex*, 333 F. Supp. 3d at 396 (finding the analysis is governed by "federal law, not state law" and applying the *Bancec* factors to decide "when an instrumentality of a foreign sovereign state becomes the alter ego of that state."); *OIEG*, 2023 WL 2609248, at *29 ("[T]he Venezuela Parties argue that Delaware law applies to this proceeding . . . This Court and the Third Circuit have previously rejected these contentions" and "adheres to and hereby adopts and incorporates by reference its holding and analysis in its earlier rejections of these positions.").

[6] In *OIEG*, the Third Circuit declined to extend its jurisdiction to the question of attachment and decided only the issue of whether PDVSA was entitled to jurisdictional immunity under FSIA. *See* 73 F.4th at 176.   That the Third Circuit appeal did not address the question of attachment does not disturb this Court's decision in *OIEG*.   *See In re Brown*, 951 F.2d 564, 569 (3d Cir. 1991) (holding that a decision need not be "final for purposes of appeal" to be preclusive).   Further, at the time of the *OIEG* appeal, the Third Circuit had already held that *Bancec* governs substantive and jurisdictional issues in *Crystallex*. *Crystallex*, 932 F.3d 126, 152 (3d Cir. 2019).

of Venezuela as an entity "totally controlled by the state." *See Northrup Grumman Ship Sys., Inc.*

*v. Ministry of Defense of the Republic of Venez.*, No. 1:20-mc-00257-LPS (D. Del. 2021) D.I. 28,

¶ 11–12).  *See also* D.I. 5, Gomez Decl., Ex. 1 ¶ 13.

## IV.    The PDVH Shares Are Not Immune from Attachment and Execution

PDVSA argues again that the PDVH shares are immune from attachment.  D.I. 12 at 9.

But this too has already been decided against PDVSA.  *See Crystallex*, 333 F. Supp. 3d 380, 406

(D. Del. 2018); *Crystallex II*, 932 F.3d 126, 152 (3d Cir. 2019), *cert. denied,* 140 S.Ct. 2762 (2020);

*OI European Grp. B.V. v. Bolivarian Republic of Venez.*, 2023 WL 2609248 (D. Del. Mar. 23,

2023), *aff'd*, 2023 WL 4385930 (3d Cir. 2023).  The same facts governing the Court's prior

decisions on immunity of the PDVH shares, including PDVSA's continued commercial use of

those shares, continue through today, necessitating the same ruling here.  *See* D.I. 3 at 6–7 (citing

D.I. 5, Gomez Decl., ¶ 10(a)).

## V.    The Equities Weigh in Favor of Issuing the Writ

Finally, even though the Court has already conclusively ruled on the issue in *Crystallex*

and *OIEG*, Venezuela observes that *Bancec* looks to "equitable principles" to determine whether

the PDVH shares may be used to satisfy Venezuela's debts. D.I. 17 at 9.  Venezuela contends here

that the equities weigh against issuing the writ in favor of ConocoPhillips' judgment against

Venezuela because ConocoPhillips negotiated for contractual limitations on PDVSA's personal

liability when it entered the Association Agreements in the 1990s, and now seeks to "circumvent"

those contractual limitations.  *Id*.

Venezuela is again inviting confusion between sources of personal liability and the

consequences of this Court's alter ego findings for purposes of enforcement.  Followed to its

logical conclusion, according to Venezuela it would always be "inequitable" to apply alter ego

doctrines to permit enforcement against the assets of one entity to satisfy the debts of another, if the creditor ever had a contract with one of them.  This would be an absurd result unsupported by precedent.

Similarly, Venezuela also complains that ConocoPhillips should not be allowed to "jump in front" of PDVSA's direct creditors by obtaining the largest writ of attachment sought by any of the judgment creditors. D.I. 17 at 8.  But that is not an argument about "equities."  That is essentially an argument for ranking alter ego creditors differently than PDVSA judgment creditors, which has been foreclosed by the Court's order regarding indicative priority (based on the date of motions for writs that are eventually granted).  It seems clear from their arguments that what PDVSA and Venezuela are really concerned about is the size of ConocoPhillips' judgment.  Of course, that is not relevant to this Motion.  This Court's alter-ego findings in *Crystallex* and *OIEG* apply equally to ConocoPhillips' Motion.  The equities here weigh in favor of ConocoPhillips.  As the District of Columbia Court has said regarding ConocoPhillips' protracted fight for compensation for Venezuela's expropriation in 2007, "fifteen years is long enough." *ConocoPhillips Petrozuata B.V., et al. v. Bolivarian Republic of Venez.*, 628 F. Supp. 3d 1, 10 (D.D.C. Aug. 2022).

## CONCLUSION

For the foregoing reasons, ConocoPhillips respectfully requests the Court deny PDVSA's motion to dismiss and enter ConocoPhillips' proposed order authorizing the issuance of a *fi fa* writ against the shares of PDVH.

Respectfully submitted,

ROSS ARONSTAM & MORITZ LLP

*Of Counsel*:

Michael S. Kim
Marcus J. Green
Josef M. Klazen
KOBRE & KIM LLP
800 Third Avenue
New York, NY 10022
(212) 488-1200
michael.kim@kobrekim.com
marcus.green@kobrekim.com
jef.klazen@kobrekim.com


Dated:  October 6, 2023

*/s/ Garrett B. Moritz*
Garrett B. Moritz (Bar No. 5646)
Elizabeth M. Taylor (Bar No. 6468)
Hercules Building
1313 North Market Street, Suite 1001
Wilmington, DE 19801
(302) 576-1600
gmoritz@ramllp.com
etaylor@ramllp.com

*Attorneys for Plaintiffs*